656 P.2d 1324 (1982)
Samuel Clinton WOODS and Donna Rijeanne Woods, Plaintiffs-Appellants,
v.
MONTICELLO DEVELOPMENT COMPANY, Defendant-Appellee.
No. 80CA0929.
Colorado Court of Appeals, Div. II.
December 2, 1982.
*1325 Sonheim & Helm, Darrel L. Matteson, Charl L. Hardesty, Arvada, for plaintiffs-appellants.
James S. Kimmel, Littleton, for defendant-appellee.
BERMAN, Judge.
Following the buyers' default on an installment land contract and declaration of forfeiture by the seller, the buyers sued for and were denied the rights of equitable redemption and cure by the trial court. The buyers appeal, and we reverse and remand.
In 1973, Samuel and Donna Woods (buyers) contracted to purchase a mobile home site from Monticello Development Company. The buyers paid $825 down and agreed to payments of $89.75 per month. Under the terms of the contract, the seller was to retain title until the full purchase price of $16,152.50 was paid. In the event of a 20-day default on any monthly installment, the contract provided that the seller could terminate the contract, and retain all sums paid as liquidated damages.
The buyers' payment record was extremely erratic from the beginning of the contract. Payments were habitually four or five months late. In the entire year of 1975, for example, the buyers paid a total of $193.50, one-half of that sum being paid in February and one-half in October.
Although the contract did not require written notice of default, after the Colorado Consumer Credit Code was amended in 1975 to require notice of default and of the right to cure within 20 days, the seller complied with its notice provisions. Twice in 1976 and again in 1977, the seller sent default notices as required by §§ 5-5-111 and 5-5-112, C.R.S.1973 (1982 Cum.Supp.). Each notice gave the buyers 20 days to pay the arrears. Even though the buyers did not timely comply with these notices, the seller did not terminate the contract, and it accepted the payments when later made.
In June 1979, the buyers moved out of the mobile home on the premises, listed it for sale with a broker, and left for Indonesia. Although they gave the broker a power of attorney, it was unnotarized. The buyers failed to notify the seller of their change of address.
A final notice of default was sent by certified mail, return receipt requested, to the mobile home address on August 1, 1979. The buyers claim they did not receive it, and the record contains no evidence of whether it was returned unclaimed.
The broker then attempted to pay the July and August arrears. He requested a payoff statement on any further amounts owing. The seller refused to supply a payoff statement or to accept any further payments because the buyers had failed to cure the default within 20 days.
The buyers brought suit in district court, claiming that they were denied the rights of cure and redemption. The trial court found that the buyers had lost their right to cure because it was not exercised within the 20-day statutory period. It also found that the right to redeem under a purchase and sale contract could be granted only in equity and that, given the buyers' poor performance under the contract, the equities did not support a right of redemption. The buyers appeal only the latter ruling here.

I.
On appeal, the buyers, citing Ulander v. Allen, 37 Colo.App. 279, 544 P.2d 1001 (1976), claim that if a buyer has acquired equity in property, such buyer automatically is entitled to redeem. We disagree.
*1326 Because there is no statutory redemption provision for installment land contracts in Colorado, any redemption rights would only be found in equity. Equitable remedies are not automaticthe term itself implies a balancing. See generally D. Dobbs, Remedies § 2.1, et seq. (1973).
Contrary to the buyers' argument, the holding of Ulander does not require equitable redemption in every case where the buyer has acquired an equitable interest in property under a land sale contract. Ulander simply restates the general rule that equitable redemption is one of the "permissible" remedies for a buyer's default under an installment land contract.[1]
The buyers argue that failure to allow an equitable redemption in this case would mean that in every instance where real property is purchased through an agreement governed by the Uniform Consumer Credit Code, redemption would be barred in lieu of curing the default. This is an overstatement. We hold only that, in addition to the right to cure, as provided by §§ 5-5-111 and 5-5-112, C.R.S.1973 (1982 Cum.Supp.), a buyer may be entitled to redeem, but only if the trial court determines that the equities so warrant.
Courts have considered numerous factors when balancing the equities in installment land contract default cases. These include the amount of the buyer's equity in the property, Cavos v. Geihsler, 109 Colo. 163, 123 P.2d 822 (1942), the length of the default period and number of defaults, Krentz v. Johnson, 36 Ill.App.3d 142, 343 N.E.2d 165 (1976), whether the buyer abandoned the property, Ahlstrand v. McPherson, 285 Minn. 398, 173 N.W.2d 330 (1969), the amount of the monthly payments in relation to the rental value of the property, Strand v. Mayne, 14 Utah 2d 355, 384 P.2d 396 (1963), the willfulness of the default, MacFadden v. Walker, 5 Cal.3d 809, 97 Cal.Rptr. 537, 488 P.2d 1353 (1971), whether the buyers made improvements to the property, Terre Grande, Inc. v. Four Corners Oil & Minerals Co., 262 F.Supp. 964 (D.Colo.1967), and whether the property had been adequately maintained. Donaldson v. Sellmer, 166 Ind.App. 60, 333 N.E.2d 862 (1975), overruled on other grounds, Morris v. Weigle, 383 N.E.2d 341 (Ind.1978).
The reviewing court should not disturb the trial court's assessment of the equities if there is evidence in the record to support that assessment. McFadzean v. Lohr, 152 Colo. 31, 380 P.2d 20 (1963). The record here supports the trial court's denial of redemption except for its failure to consider the factual matter of waiver, as discussed infra. No improvements had been made on the property. Payments were habitually late, and often inadequate. The equity gained by the buyers was small $1,815and less than one-third of the contract's performance was completed. Moreover, the buyers had abandoned the property. Thus, the trial court reasonably concluded that the balance of the equities did not support redemption.
The buyers also contend that equity abhors all forfeitures, and that through denial of redemption, they have forfeited approximately $1,800. While it is true that equity abhors forfeiture, we have consistently limited the application of this equitable maxim to cases where the buyer has substantially performed his duties under the contract. See, e.g., Gore Trading Co. v. Alice, 35 Colo.App. 97, 529 P.2d 324 (1974). Moreover, the forfeiture here is minimal. The trial court found that the buyers' monthly payments exceeded the fair rental value of the property by only $9.75 per month.

II.
Notwithstanding the trial court's finding that a non-waiver provision in the *1327 land sale contract was controlling, the buyers claim that the seller waived its right to insist on timely payments because of its continued acceptance of late installments. We hold that non-waiver provisions do not necessarily preclude a waiver by course of performance, and reverse and remand for a factual determination of this issue.
The contract construed here contains the following provision:
"Time is of the essence of the agreement. No waiver by Seller of the breach of any covenant or condition hereof shall be construed as a waiver of any succeeding breach thereof."
The trial court found that the above clause precluded a finding of waiver by course of conduct. The weight of authority conflicts with this view, and rather is to the effect that an anti-waiver clause, like any other term in the contract, is itself subject to waiver or modification by course of performance. See, e.g., Westinghouse Credit Corp. v. Shelton, 645 F.2d 869 (10th Cir. 1981); Smith v. General Finance Corp., 243 Ga. 500, 255 S.E.2d 14 (1979); Pierce v. Leasing International, Inc., 142 Ga.App. 371, 235 S.E.2d 752 (1977); Van Bibber v. Norris, 404 N.E.2d 1365 (Ind.App.1980); Cobb v. Midwest Recovery Bureau Co., 295 N.W.2d 232 (Minn.1980).
We adopt the above rule for Colorado, and find that the buyers "should have the opportunity to prove, if [they] can, that [the seller's] conduct in toto regarding timeliness was so pervasive that in the eyes of a reasonable debtor it `spoke louder than [the] word,' ... of the `anti-waiver' clause, which in effect counseled against reliance on conduct indulging default." Westinghouse Credit Corp., supra, at 874.
The judgment is reversed, and the cause is remanded for determination of the factual question of waiver, and for reexamination of the court's original decision in light of that determination.
PIERCE and STERNBERG, JJ., concur.
NOTES
[1] Other jurisdictions have fashioned various remedies, including rescission, a judicial foreclosure sale akin to that used when a deed of trust is involved, and cure by tender of delinquent payments. See Comment, The Default Clause in the Installment Land Contract, 42 Mont.L.Rev. 110 (1981); Comment, Forfeiture: The Anomaly of the Land Sale Contract, 41 Albany L.Rev. 71 (1977).