**CEDAR LANE INVESTMENTS, a Colorado general partnership, Plaintiff–Appellee,**

v.

**AMERICAN ROOFING SUPPLY OF COLORADO SPRINGS, INC., a Colorado Corporation, Defendant–Appellant.**

No. 95CA0602.

Colorado Court of Appeals, Div. IV.

April 18, 1996.

Rehearing Denied May 23, 1996.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1995 Cum.Supp.).

Quimby & Higgins, B. Douglas Quimby, Sharon A. Higgins, Jayne Candea–Ramsey, Colorado Springs, for Plaintiff–Appellee.

Bill Edie, Colorado Springs, for Defendant–Appellant.

The Iuppa Law Firm, Barney Iuppa, Colorado Springs, for Defendant–Appellant (on the opening brief).

Opinion by Judge BRIGGS.

In this quiet title action, defendant, American Roofing Supply of Colorado Springs, Inc. (American Roofing), appeals from the judgment in favor of plaintiff, Cedar Lane Investments (Cedar Lane). We affirm in part, reverse in part, and remand for further proceedings.

Allan Capps, a stockholder and employee of American Roofing, embezzled more than $200,000 from the company. Approximately $50,000 of this amount was used as a down payment on commercial real estate that he and his wife purchased from Cedar Lane pursuant to an installment land contract. The contract required, in addition to the $50,000 down payment, that the Cappses pay $750 in monthly interest and make a balloon payment of $100,000 after two and a half years.

After the Cappses entered into possession, they made 30 payments totalling $22,500 and constructed improvements on the real estate costing in excess of $16,000. The cost of the improvements was also funded with money Allan Capps stole from American Roofing.

The Cappses defaulted on the installment land contract by failing to make the balloon payment. Cedar Lane then commenced a forcible entry and detainer (F.E.D.) action against them. At that time, American Roofing had filed a *lis pendens* and a judgment lien against the real estate. However, while its counsel attended the F.E.D. hearing, American Roofing did not formally intervene.

One of the issues the Cappses raised at the hearing was whether they were entitled to any equitable relief from their default on the installment land contract pursuant to *Grombone v. Krekel*, 754 P.2d 777 (Colo.App.1988). Cedar Lane's counsel argued, among other things, that the Cappses had no equitable interest in the property because the money they expended for the down payment and improvements belonged not to the Cappses, but to American Roofing.

After the hearing, the trial court indicated it was satisfied with the statement of Cedar Lane's counsel that American Roofing would

be allowed to claim whatever interest it believed it had in the property. The court therefore concluded that the Cappses had no right, title, or interest in the property, terminated the installment land contract, and granted Cedar Lane immediate possession.

Cedar Lane then commenced this quiet title action. American Roofing filed a counterclaim seeking recovery of the money taken from it by Allan Capps and paid to Cedar Lane. It set forth a claim for relief based on § 18–4–405, C.R.S. (1995 Cum.Supp.) and another based on a claim of unjust enrichment.

Both parties filed motions for summary judgment. Cedar Lane, relying in part on its asserted status as a bona fide purchaser without knowledge that Capps had stolen the money invested in the property, argued that American Roofing had no right, title, or interest in the property and requested that title be quieted in it. American Roofing argued it was entitled either to recover its funds under § 18–4–405 or to equitable relief for unjust enrichment. It requested that the court impose a constructive trust or equitable lien on the real estate.

The trial court concluded that, because Cedar Lane was no longer in actual possession of the stolen funds, American Roofing was not entitled to relief under § 18–4–405. It also ruled that American Roofing was not entitled to equitable relief because Cedar Lane had received the funds from the Cappses without knowledge of any claim by American Roofing. Finally, the court found Cedar Lane was not unjustly enriched by the improvements to the real estate because Cedar Lane had not initiated them.

## I.

■ American Roofing first contends that the trial court erred in concluding that it was not entitled to recover the stolen funds pursuant to § 18–4–405. We disagree.

■ Section 18–4–405 permits the rightful owner of property to recover stolen property in the possession of another person and, in certain circumstances, to obtain treble damages. The property may be recovered even if the person in possession is a bona fide

purchaser for value. *See In re Marriage of Allen,* 724 P.2d 651 (Colo.1986).

The statute does not define "possession." However, in *In re Marriage of Allen, supra,* the supreme court interpreted the statute to permit recovery only against a person having possession of the actual property stolen. The court further noted: "Section 18–4–405 should not be read as a codification of the remedy of replevin or as a delineation of the grounds for creating a constructive trust. Instead, it provides independent remedies to the owner of stolen property in circumstances specifically described in the statute." *In re Marriage of Allen, supra,* 724 P.2d at 658.

The stolen property that American Roofing seeks to recover is the money Allan Capps used to purchase and improve the real estate. It is undisputed that Cedar Lane no longer has possession of the money, having used it for matters relating to its business. Therefore, because Cedar Lane is no longer in "possession" of the money, we conclude that the trial court properly granted summary judgment in favor of Cedar Lane on the claim against it under § 18–4–405. *See In re Marriage of Allen, supra.*

■ American Roofing also contends that it is entitled to damages based on a theory of conversion. However, that argument was not raised in the trial court and thus is not properly before us. We therefore decline to address it. *See Matthews v. Tri–County Water Conservancy District,* 200 Colo. 202, 613 P.2d 889 (1980); *Hansen v. GAB Business Services, Inc.,* 876 P.2d 112 (Colo.App. 1994).

## II.

American Roofing also contends that the trial court erred in not granting it equitable relief. We conclude that further proceedings are necessary.

## A.

■ American Roofing initially contends that Cedar Lane is precluded under the doctrine of judicial estoppel from contesting whether American Roofing had an interest in the real estate and that the trial court, on

this basis, was required to grant the requested equitable relief. However, this argument is also raised for the first time on appeal, and we therefore likewise decline to address it. *See Matthews v. Tri–County Water Conservancy District, supra; Hansen v. GAB Business Services, Inc., supra.*

## B.

■ To recover under a theory of unjust enrichment or quantum meruit, American Roofing must establish that: (1) a benefit was conferred on Cedar Lane; (2) the benefit was appreciated by Cedar Lane; and (3) the benefit was accepted by Cedar Lane under circumstances that would make it inequitable for Cedar Lane to retain the benefit without payment of its value. *See Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n,* 649 P.2d 1093 (Colo.1982); *Law Offices of Losavio v. Law Firm of McDivitt,* 865 P.2d 934 (Colo.App.1993).

■ A constructive trust is a remedy for unjust enrichment. *See* 1 D. Dobbs, *Law of Remedies* § 4.3(2) at 597 (2d ed. 1993). It is an equitable device used to compel a person who unfairly holds property of another to convey that property to one to whom it justly belongs. Its purpose is to prevent the unjust enrichment of the person holding the property at the expense of the rightful owner. *In re Marriage of Allen, supra.*

■ An equitable lien is a special and limited form of a constructive trust. It provides a security interest in the property which can be used to satisfy the claim of a person who may have only a partial interest in the property. *See Leyden v. Citicorp Industrial Bank,* 782 P.2d 6 (Colo.1989).

Cedar Lane relies on the supreme court's conclusion in *In re Marriage of Allen, supra,* that neither a constructive trust nor an equitable lien may be used to defeat the interests of a bona fide purchaser for value. It contends that it was, in effect, a bona fide purchaser for value of the money received from the Cappses and the improvements to the property. Thus, it reasons, neither a constructive trust nor an equitable lien is appropriate.

In support of the contention that it was a bona fide purchaser for value, Cedar Lane argues that it gave "value" because it received the down payment pursuant to an arm's-length transaction involving an installment land contract: it agreed to transfer immediate possession of the real estate to the Cappses, it was required to give clear title to the real estate upon satisfaction by the Cappses of the terms of the installment land contract, and it gave up the opportunity to use the real estate or to sell it to someone else. Cedar Lane further argues that, as to the improvements, a claim for unjust enrichment is not supportable because it did not require, request, or encourage the Cappses to make the improvements.

■ We agree that a vendor can be treated in effect as a bona fide purchaser for value of money received. *See generally* 1 D. Dobbs, *Law of Remedies, supra,* § 4.7(2). However, with regard to the down payment, Cedar Lane's argument focuses on a strict definition of "value" at the time of the contract. In contrast, the supreme court has concluded that, in determining whether sufficient value has been given, the focus should be on whether, in light of the consideration exchanged, the person claiming bona fide purchaser status has been unjustly enriched. *See In re Marriage of Allen, supra.*

By accepting the obligations of the installment land contract and transferring possession of the real estate to the Cappses, Cedar Lane initially gave sufficient consideration to defeat a claim of unjust enrichment. However, after the forfeiture and successful prosecution of the F.E.D. action, Cedar Lane again had possession of the real estate and all the rights of ownership, including the right to sell the property. It also had the $50,000 paid as a down payment and the $22,500 in interest payments, as well as the $16,000 in improvements to the real estate.

By reacquiring the improved real estate without payment of additional consideration or other obligation, Cedar Lane recaptured the "value" it gave. Thus, for purposes of considering whether to impose a constructive trust or an equitable lien, Cedar Lane's status as a bona fide purchaser for value protects it only to the extent it was not unjustly

enriched as the result of the installment land contract forfeiture. American Roofing is therefore entitled to equitable relief to the extent that Cedar Lane was unjustly enriched. *See In re Marriage of Allen, supra.*

■ Contrary to Cedar Lane's assertions, we conclude that, at least in the unique circumstances involving installment land contract forfeitures, reacquisition of the property may be considered in evaluating whether equitable relief is available. Equity by its very nature is applied on a case-by-case basis. *See In re Marriage of Cargill,* 843 P.2d 1335 (Colo.1993).

To ignore that Cedar Lane has regained possession of the property, with improvements, without repaying any of the funds received from the Cappses is to ignore the equitable realities. The result would be that a vendor unjustly enriched by receiving stolen funds, unlike other vendors, would have immunity from a claim for equitable relief upon the purchaser's default under an installment land contract.

However, it does not follow that all or any part of the benefit Cedar Lane received necessarily constitutes unjust enrichment. After entering into the installment land contract in good faith, it surrendered possession and clear title for an extended period of time. It would not serve equity to deprive it of the fair benefit of its bargain. *See generally* E. Freyfogle, *Vagueness and the Rule of Law: Reconsidering Installment Land Contract Forfeitures,* 1988 Duke L.J. 609 (1988).

■ American Roofing should therefore have no better equitable claim than would the Cappses if they had invested their own funds as purchasers of the property. In turn, purchasers defaulting on an installment land contract may or may not have a claim for equitable relief. Whether an equitable remedy will be provided depends on a number of factors, including the amount of the purchaser's equity in the property, the length of the default period and number of defaults, the amount of the monthly payments in relation to the rental value of the property, the value of improvements to the property, and the adequacy of the property's maintenance.

*See Woods v. Monticello Development Co.,* 656 P.2d 1324 (Colo.App.1982).

■ Even if we were to treat the default on the installment land contract as having no effect on Cedar Lane's status as a bona fide purchaser, it would not necessarily defeat the claim of unjust enrichment in the circumstances presented here. A second analytical path within the rubric of unjust enrichment that ignores Cedar Lane's status leads to the same result.

As noted, a purchaser defaulting on an installment land contract may have a claim for equitable relief from the strict terms of the contract. Here, the Cappses' claim for equitable relief was dismissed because the money invested in the property belonged not to them, but to American Roofing. But for the fortuity that the funds Cedar Lane received had been stolen, it would have been subject to a claim of unjust enrichment by the Cappses. Accordingly, to the extent that the circumstances would establish that Cedar Lane has been unjustly enriched, American Roofing is entitled to be subrogated to the position of the defaulting purchasers in order to avoid the unjust enrichment at its expense. *See generally* 1 D. Dobbs, *Law of Remedies, supra,* § 4.3(4), at 604, 606 ("Subrogation may also arise because it is imposed by courts to prevent unjust enrichment.... So the plaintiff is permitted to stand in the shoes of [the party holding the right] and enforce the claim which [that party] had."); *cf. In re Marriage of Allen, supra.*

■ We recognize that equitable relief, including subrogation, ordinarily does not run against a bona fide purchaser. *See generally,* 1 D. Dobbs, *Law of Remedies, supra,* § 4.71. However, the ordinary claim for equitable relief against a person who receives stolen funds is based solely on the fact that the funds were stolen.

In contrast, the claim for unjust enrichment by American Roofing does not arise *solely* because the funds were stolen. Rather, the claim arises out of the default on the installment land contract, which raises separate equitable concerns. The equitable subrogation merely transferred the separately existing claim for unjust enrichment from the

Cappses to American Roofing. In effect, the claim for unjust enrichment survives *despite* the fact the funds were stolen. Otherwise, as noted, a vendor under an installment land contract receiving stolen funds could always defeat a claim for unjust enrichment, no matter how unjust the enrichment, while other vendors could not.

 We further recognize that American Roofing in its counterclaim did not refer to equitable subrogation. However, we do not view equitable subrogation as a separate claim for relief, but rather as one of the various theories of unjust enrichment, which American Roofing has properly set forth as a claim for relief. No more was required. *See Yoder v. Hooper,* 695 P.2d 1182, 1185 (Colo.App.1984)("Under our rules of civil procedure, the precise legal theory asserted by a claimant is not controlling, so long as the complaint gives sufficient notice of the transaction sued upon.").

Under either theory of unjust enrichment, if American Roofing were successful in establishing that Cedar Lane has been unjustly enriched, the remedy would have to be tailored to the current status of both it and Cedar Lane. Hence, while equitable redemption has been recognized as one appropriate remedy for defaulting purchasers, a different equitable remedy may be appropriate in these circumstances. *See Woods v. Monticello Development Co., supra* (fn.1)("Other jurisdictions have fashioned various remedies, including rescission, a judicial foreclosure sale akin to that used when a deed of trust is involved, and cure by tender of delinquent payments."); *see generally* E. Freyfogle, *supra;* G. Nelson & D. Whitman, *Installment Land Contracts—The National Scene Revisited,* 1985 B.Y.U. L.Rev. 1 (1985); *The Default Clause in the Installment Land Contract,* 42 Mont. L.Rev. 110 (1981); Comment, *Forfeiture: The Anomaly of the Land Sale Contract,* 41 Alb. L.Rev. 71 (1977).

As to the more than $16,000 in improvements made by the Cappses to the real estate, Cedar Lane separately contends, relying on *Ninth District Production Credit Ass'n v. Ed Duggan, Inc.,* 821 P.2d 788 (Colo. 1991), that because it did not initiate the improvements, a claim for unjust enrichment is not viable. However, the rule announced in *Ninth District* restricted the availability of a claim of unjust enrichment to provide the parties subject to a statutory scheme with predictability for transactions and with notice of the consequences of their actions. *See Dove Valley Business Park Associates, Ltd. v. Board of County Commissioners,* —— P.2d —— (Colo.App. No. 94CA1883, December 21, 1995).

Here, no similar statutory scheme is involved. Thus, we conclude that on remand the trial court should also reconsider whether American Roofing is entitled to equitable relief based on the increase, if any, in the value of the property resulting from the improvements. *See generally* E. Freyfogle, *supra.* As already noted, Cedar Lane should not be deprived of the benefit of its bargain and thus should be left in no worse position than it held after the default by the Cappses, again ignoring the source of the funds used to pay for the improvements.

Under the circumstances here, an equitable lien in favor of American Roofing may be appropriate to the extent that Cedar Lane was unjustly enriched by the investment of American Roofing's money in the real estate. Accordingly, further proceedings are required so that the trial court can make the necessary factual findings and, if appropriate, fashion a suitable remedy.

The judgment is affirmed as to the denial of the claim under § 18–4–405. It is reversed as to the denial of the claim for equitable relief, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

MARQUEZ, J., concurs.

KAPELKE, J., concurs in part and dissents in part.

Judge KAPELKE concurring in part and dissenting in part.

Because I disagree with the conclusion reached by the majority in Part II B of its opinion, I respectfully dissent as to that part.

The trial court determined that American Roofing was not entitled to relief on its claim of unjust enrichment because Cedar Lane

was a bona fide purchaser for value. In my view, the trial court's conclusion is supported by the record and the applicable law.

As our supreme court recognized in *In re Marriage of Allen,* 724 P.2d 651, 658 (Colo. 1986), "neither an equitable lien nor a constructive trust is available against a bona fide purchaser for value." That principle is dispositive here.

In consideration for its receipt of the $50,000 down payment on the installment land contract, Cedar Lane conferred upon the Cappses: the right to obtain clear title to the property upon satisfying the conditions of the contract; the right to lock in the purchase price for the next two and one-half years regardless of market conditions; and the right to occupy the property. The transaction between Cedar Lane and the Cappses was undertaken without knowledge on the part of Cedar Lane of the claims of American Roofing.

Under these circumstances, I would agree with the trial court that Cedar Lane was a bona fide purchaser for value, rather than an "innocent donee." Accordingly, American Roofing is not entitled to either a constructive trust or equitable lien remedy. *In re Marriage of Allen, supra.*

The supreme court held in *In re Marriage of Allen, supra,* that a wife who had received certain embezzled funds in a dissolution proceeding had not given value for such funds and was therefore an innocent donee rather than a bona fide purchaser. Accordingly, the victim of the embezzlement was entitled to an equitable lien or imposition of a constructive trust on the funds.

Here, the majority agrees that Cedar Lane was a bona fide purchaser with respect to the initial installment land contract and its receipt of the down payment. The majority goes on to conclude, however, that because Cedar Lane later regained possession of the property, as a result of the Cappses' default on the installment land contract, Cedar Lane's status changed from that of a bona fide purchaser to that of an innocent donee.

In my view, Cedar Lane retained its status as a bona fide purchaser for value and, in regaining possession of the property and

keeping the down payment, it was simply exercising the contractual rights for which it had bargained in an arms-length transaction. It was not unjustly enriched.

While Cedar Lane did receive benefits, including some improvements to the property added by the Cappses, the benefits were not accepted or received under circumstances that would make it inequitable for Cedar Lane to retain them. *See Ninth District Production Credit Ass'n v. Ed Duggan, Inc.,* 821 P.2d 788 (Colo.1991) (recognizing that a secured creditor is not unjustly enriched by receiving collateral that has increased in value without expense to the second creditor).

Finally, the majority concluded that American Roofing may be equitably subrogated to the claim of the Cappses as a defaulting purchaser and may therefore seek equitable relief from the terms of the installment land contract.

Like the equitable lien and constructive trust remedies, equitable subrogation is not available as against a bona fide purchaser. *See* 1 D. Dobbs, *Law of Remedies* § 4.71 at 661 (2d ed. 1993). Because, in my view, Cedar Lane is a bona fide purchaser for value, I see no basis for the subrogation remedy here.

Moreover, in its pleadings in the trial court, American Roofing did not assert a claim based on equitable subrogation. Nor did it allege that the Cappses, as purchasers under the installment land contract, had acquired a substantial equitable interest in the property so as possibly to give rise to a right of equitable redemption or other such remedy. *See Ulander v. Allen,* 37 Colo.App. 279, 544 P.2d 1001 (1976).

I would therefore affirm the judgment of the trial court.